

FILED
LORAIN COUNTY
2018 FEB 20 AM 9: 45
COURT OF COMMON PLEAS
TOM ORLANDO

201800695
(kd)

COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

18 CV 194548

Wells Fargo Bank, N.A.
Foreclosure Unit, PA 1331
123 S. Broad Street, 7th Floor
Philadelphia, PA 19109-1029

               Plaintiff

       vs.

Edith M. Call
5278 Mills Creek Lane
North Ridgeville, OH 44039

John Doe, name unknown, spouse
of Edith M. Call
5278 Mills Creek Lane
North Ridgeville, OH 44039

Lorain County Treasurer
226 Middle Avenue
Elyria, OH 44035

Fifth Third Bank (Northeastern Ohio)
Consumer Foreclosure
MD #1MOBBW
5001 Kingsley Drive
Cincinnati, OH 45227

The Mills Creek Association
c/o K&C Service Corporation, Statutory
Agent
50 Public Square #2000
Cleveland, OH 44113

Case No. _____

**COMPLAINT IN FORECLOSURE**

Permanent Parcel No. 07-00-007-130-070

JUDGE MARK A. BETLESKI



LSR201800695D157P1300C9

City of North Ridgeville Ohio
P.O. Box 470537
Broadview Heights, OH 44147

                              Defendant.


## **COMPLAINT**

### COUNT ONE

1.   Plaintiff is entitled to enforce a note, the original of which is in plaintiff's possession.  A copy of the note is attached hereto as Exhibit A.

2.   There has been a default under the terms of the note; plaintiff has performed all conditions precedent; and plaintiff has accelerated the debt.

3.   There is due to plaintiff from the defendant, Edith M. Call, upon the note, the sum of $157,394.47, with interest at the rate of 3.5000% per year from August 1, 2017, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges as allowed by law.

### COUNT TWO

4.   Plaintiff incorporates the allegations of Count One and further states that the note is secured by a mortgage, a copy of which is attached hereto as Exhibit B.  The mortgage is a valid first lien upon the real estate described therein.

5.   The mortgage was filed for record on March 31, 2015, in Instrument No. 2015-0539540, of the county recorder's records and it was assigned to the plaintiff herein.  The conditions of defeasance contained therein have been broken; plaintiff has complied with all conditions precedent; and plaintiff is entitled to have said mortgage foreclosed.  A copy of said Assignment is attached hereto as Exhibit C.

6.   Plaintiff says that the defendant, John Doe, name unknown, spouse of Edith M. Call, may claim an interest in the subject property as the current spouse of the defendant-titleholder, Edith M. Call.  Plaintiff states that it cannot currently discover the real name of said defendant.

7.   Plaintiff says that the defendant, The Mills Creek Association, may claim an interest in the above described property by virtue of a judgment lien against Edith M. Call, filed for record on 09/08/17, in Instrument No. 2017-0643505, of said County Recorder's Records.

8.   Plaintiff says that the defendant, City of North Ridgeville Ohio, may claim an interest in the above described property by virtue of a judgment lien against Edith M. Call, filed for record on 01/19/18, in Judgment Lien Docket 18CJ103128, of said County Clerk's Records.

9.   Plaintiff says that the defendant, Lorain County Treasurer, may claim an interest in the above described property by virtue of any unpaid real estate taxes and/or assessments due and owing on the subject property.

10.  Plaintiff says that the defendant, Fifth Third Bank (Northeastern Ohio), may claim an interest in the above described property by virtue of a mortgage from Myron Xenos and Daryl E. Xenos, prior titleholders, filed for record on 10/02/13, in Instrument

No. 2013-0480946, of said County Recorder's Records, which lien is believed to be paid off, however, not released of record.

11. The approved legal description is attached hereto as Exhibit D.

WHEREFORE, plaintiff prays for judgment against defendant, Edith M. Call, in the amount of $157,394.47, together with interest at the rate of 3.5000% per year from August 1, 2017, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, and that said mortgage be foreclosed; that said real property may be ordered sold, and that plaintiff be paid out of the proceeds of such sale; for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same.

Amanda B. Romanello
OH S.C. #0080681
Who enters an appearance
as counsel of record

Olivia M. Earls, Trial Counsel
Ohio Supreme Court Reg. No. 0095663
LERNER, SAMPSON & ROTHFUSS
Attorneys for Wells Fargo Bank, N.A.
P.O. Box 5480
Cincinnati, OH 45201-5480
(513) 241-3100
(513) 241-4094 Fax
(877) 661-7891 Toll Free Fax
attyemail@lsrlaw.com

WRITTEN REQUEST FOR CERTIFIED MAIL SERVICE BY THE CLERK OF COURTS
OF LORAIN COUNTY, OHIO ON THE FOLLOWING NAMED DEFENDANT(S):

Edith M. Call
5278 Mills Creek Lane
North Ridgeville, OH 44039

John Doe, name unknown, spouse of Edith M. Call
5278 Mills Creek Lane
North Ridgeville, OH 44039

Lorain County Treasurer
226 Middle Avenue
Elyria, OH 44035

Fifth Third Bank (Northeastern Ohio)
Consumer Foreclosure
MD #1MOBBW
5001 Kingsley Drive
Cincinnati, OH 45227

The Mills Creek Association
c/o K&C Service Corporation, Statutory Agent
50 Public Square #2000
Cleveland, OH 44113

City of North Ridgeville Ohio
P.O. Box 470537
Broadview Heights, OH 44147

# EXHIBIT A



# NOTE

| FHA CASE NO. |
|---|
|  |

**March 31, 2015**
[Date]

**5278 MILLS CREEK LN, NORTH RIDGEVILLE, OH  44039**
[Property Address]

### 1.  PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **FIRST FEDERAL S & L ASSOCIATION OF LAKEWOOD**
and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of  **One Hundred Sixty-Four Thousand, Nine Hundred Fifty-Seven and No/100------------------------------------ Dollars** (U.S. $    **164,957.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  **Three and One-Half**           percent (  **3.5000** %) per year until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT
(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **May 1, 2015**               . Any principal and interest remaining on the first day of  **April, 2045**              , will be due on that date, which is called the "Maturity Date."

(B)  Place
Payment shall be made at   **14806 DETROIT AVENUE**
**LAKEWOOD, OHIO  44107-3988**

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $        **740.73** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE
ITEM 6432L1 (110614)

GreatDocs®.
(Page 1 of 3)



**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge   ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.0000 %**) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this

MULTISTATE FHA FIXED RATE NOTE

MULTISTATE
ITEM 6432L2 (110814)

6/96

GreatDocs®
(Page 2 of 3)

Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____(Seal)          _____(Seal)
EDITH M. CALL                    -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                        -Borrower

*[Sign Original Only]*

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:
Organization: **FIRST FEDERAL S & L ASSOCIATION
               OF LAKEWOOD**                                  NMLSR ID: ███████

Individual:  **CAROLINE A PURCELL**                          NMLSR ID: ███████

MULTISTATE FHA FIXED RATE NOTE                                          6/96

MULTISTATE
ITEM 6432L3 (110614)                                          GreatDocs®
███████                                                      (Page 3 of 3)

## ALLONGE TO THE PROMISSORY NOTE

First Federal S & L Association of Lakewood

Borrower(s) Name(s):      EDITH M CALL

Subject Property Address:      5278 MILLS CREEK LN, NORTH RIDGEVILLE, OH 44039

Date of Note: 3/31/2015

Loan Amount: $164,957.00

**PAY TO THE ORDER OF _WELLS FARGO BANK, N.A.._**

**WITHOUT RECOURSE THIS 8 DAY OF APRIL, 2015**

**FIRST FEDERAL S & L ASSOCIATION OF LAKEWOOD**

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY
DAVID C. PETERSON, SENIOR VICE PRESIDENT

By: _____

**Mary Ann Stropkay**

**Sr. VP Residential Lending**

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____

DAVID C. PETERSON, SENIOR VICE PRESIDENT

017

# EXHIBIT B

Doc ID:   018681050001A Type: OFF
Kind: MORTGAGE
Recorded: 03/31/2015 at 03:05:32 PM
Fee Amt: $124.00 Page 1 of 14
Lorain County, Ohio
Judith M Nedwick County Recorder
File **2015-0539540**

———————— |Space Above This Line For Recording Data| ————————

## OPEN-END MORTGAGE

| FHA CASE NO. |

THE MORTGAGE ("Security Instrument") is given on March 31, 2015          . The mortgagor is
**EDITH M. CALL, UNMARRIED**

("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting
solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**FIRST FEDERAL S & L ASSOCIATION OF LAKEWOOD**

("Lender") is organized and existing
under the laws of THE STATE OF OHIO                                                           , and
has an address of  14806 DETROIT AVENUE
LAKEWOOD, OHIO  44107-3988

Borrower owes Lender the principal sum of One Hundred Sixty-Four Thousand, Nine Hundred
**Fifty-Seven and No/100**————————————————————— Dollars (U.S. $   **164,957.00**).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**April 1, 2045**              . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For

OHIO FHA MORTGAGE                                                                                6/96

OHIO-MERS                                                                                    GreatDocs®
ITEM 9690L1 (112012)                                                                         (Page 1 of 10)

File Number: 20150539540      Page 1 of 14

this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **LORAIN** County, Ohio:

**SEE ATTACHED EXHIBIT "A"**

which has the address of **5278 MILLS CREEK LN**

[Street]

**NORTH RIDGEVILLE** , Ohio **44039** ("Property Address");

[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security

OHIO FHA MORTGAGE 6/96

OHIO-MERS GreatDocs®
ITEM 9696L2 (112013) (Page 2 of 10)

UNOFFICIAL

Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

- FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
- SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
- THIRD, to interest due under the Note;
- FOURTH, to amortization of the principal of the Note; and
- FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly

OHIO FHA MORTGAGE                                                                                                6/96

OHIO-MERS
ITEM 9550L3 (110212)                                              GreatDocs®
                                                                                       (Page 3 of 10)

payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that distinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

OHIO FHA MORTGAGE                                                                                      6/96

OHIO-MERS                                                                                       GreatDocs®
ITEM 9906L4 (1120133)                                                                          (Page 4 of 10)

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  Fees. Lender may collect fees and charges authorized by the Secretary.

9.  Grounds for Acceleration of Debt.

(a)  Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)  Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days                     from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days                     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

OHIO FHA MORTGAGE                                                                                           6/96

OHIO-MERS
ITEM 9601L5 (112012)

GreatDocs™
(Page 3 of 10)

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences

OHIO FHA MORTGAGE                                                                                     6/96

OHIO-MERS                                                                                        GreatDocs®
ITEM 9604L6 (112013)                                                                              (Page 6 of 10)

shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for

OHIO FHA MORTGAGE                                                                6/96
OHIO-MERS
ITEM 9590L7 (112012)                                                          GreatDocs®
                                                                           (Page 7 of 10)

releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, LORAIN County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this paragraph 20 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

21. **Riders to This Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider        [ ] Graduated Payment Rider   [X] Growing Equity Rider

[X] Planned Unit Development Rider   [ ] Adjustable Rate Rider   [ ] Rehabilitation Loan Rider

[ ] Non-Owner Occupancy Rider   [ ] Other [Specify]

OHIO FHA MORTGAGE                                          6/96

OHIO-MERS
ITEM 9090L8 (110203)

GreatDocs™
(Page 8 of 10)

File Number: 20150539540     Page 8 of 14

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Executed this  31st   day of   March, 2015

_____(Seal)          _____(Seal)
                                  -Borrower                                          -Borrower
EDITH M. CALL

_____(Seal)          _____(Seal)
                                  -Borrower                                          -Borrower

_____(Seal)          _____(Seal)
                                  -Borrower                                          -Borrower

OHIO FHA MORTGAGE                                                          696

OHIO-MERS
ITEM 9660L9 (112012)                                                     GreatDocs®
                                                                         (Page 9 of 10)

UNOFFICIAL

State of   OHIO
County of   CUYAHOGA

    The foregoing instrument was acknowledged before me this   March 31, 2015       by
EDITH M. CALL

                                                 Notary Public

NOTARY ... OF OHIO
... ... , 2017

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:
Organization:  FIRST FEDERAL S & L ASSOCIATION       NMLSR ID:  697346
                OF LAKEWOOD

Individual:  CAROLINE A PURCELL                 NMLSR ID:  712911

This instrument was prepared by:  FIRST FEDERAL S & L ASSOCIATION
OF LAKEWOOD                             [Name]

After Recording Return To:

OHIO FHA MORTGAGE                                      6/96

OHIO-MERS                                     GreatDocs®
ITEM 0690L10 (112913)                          (Page 10 of 10)

**Exhibit "A"**
**Legal Description**

Situated in the City of North Ridgeville, County of Lorain and State of Ohio:
And known as being Sublot No. 238 in Mills Creek Subdivision Section "D"
as shown by the recorded plat in Volume 25 of Maps, Page 37 of Lorain
County Records, and having a frontage of 80.00 feet on the Westerly side of
Mills Creek Lane, and extending back of equal width 285.00 feet, be the same
more or less, but subject to all legal highways. *And being a part of original Ridgeville township, Lot 7*
Common Address:  5278 Mills Creek Lane, North Ridgeville, OH 44039
Permanent Parcel No.: 07-00-007-130-070

UNOFFICIAL

# PLANNED UNIT DEVELOPMENT RIDER

412-806577-4-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this  31st  day of  March 2015  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**FIRST FEDERAL S & L ASSOCIATION OF LAKEWOOD**
("Lender") of the same date and covering the property described in the Security Instrument and located at:
**5278 MILLS CREEK LN, NORTH RIDGEVILLE, OH 44039**

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as
**MILLS CREEK SUBDIVISION**

[Name of Planned Unit Development Project]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

MULTISTATE FHA PLANNED UNIT DEVELOPMENT RIDER                                                   2/91

MULTISTATE
ITEM 6543L1                                                                                          GreatDocs®
(042809)                                                                                          *(Page 1 of 3)*

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



MULTISTATE FHA PLANNED UNIT DEVELOPMENT RIDER          2/91

MULTISTATE
ITEM 6543L2                                    GreatDocs®
(042809)                                     (Page 2 of 3)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this Planned Unit Development Rider.



_____ (Seal)      _____ (Seal)
EDITH M. CALL                -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                  -Borrower                                      -Borrower

*[Sign Original Only]*

[ADS ANY NECESSARY ACKNOWLEDGEMENT PROVISIONS.]

MULTISTATE FHA PLANNED UNIT DEVELOPMENT RIDER                    2/91

MULTISTATE
ITEM 6543L3                                                          GreatDocs®
(042809)                                                         *(Page 3 of 3)*

INSIGHT TITLE COMPANY
1100 SUPERIOR AVE STE 950
CLEVELAND, OH 44114

# EXHIBIT C

Type: OFFICIAL RECORDS
Kind: ASSIGNMENT
Recorded: 12/4/2015 10:32:14 AM
Fee Amt: $32.00  Page 1 of 2
Lorain County, Ohio
Judith M Nedwick County Recorder

**File# 2015-0568151**

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9289-016 PO
BOX 1629, EAGAN, MN  55121-4400

### CORPORATE ASSIGNMENT OF MORTGAGE

Lorain, Ohio
"CALL"

Date of Assignment: November 23rd, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST
FEDERAL S & L ASSOCIATION OF LAKEWOOD, ITS SUCCESSORS AND ASSIGNS at P.O. BOX
2026, FLINT, MI 48501-2026
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: EDITH M. CALL, UNMARRIED  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR FIRST FEDERAL S & L ASSOCIATION OF LAKEWOOD, ITS
SUCCESSORS AND ASSIGNS
Date of Mortgage:  03/31/2015 Recorded: 03/31/2015  as Instrument No.: 2015-0538540 in the
County of Lorain, State of Ohio.

Property Address: 5278 MILLS CREEK LN, NORTH RIDGEVILLE, OH  44039

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $164,997.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under
the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the
foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST
FEDERAL S & L ASSOCIATION OF LAKEWOOD, ITS SUCCESSORS AND ASSIGNS
On _____

By:_____
Kelley Christine Butikofer
Assistant Secretary

File number: 2015-0558161    Page 1 of 2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 11-23-05, before me, Yves Akara Kenao, a Notary Public in the State of
Minnesota, personally appeared Kelley Christine Butikofer, Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal.

_Yves Akara Kenao_

Yves Akara Kenao

YVES AKARA KENAO
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

Notary Expires:  1/31/17

(This area for notarial seal)

Prepared By:  LUKE HERNANDEZ, WELLS FARGO BANK, N.A. 1000 BLVD GENTIAN RD, SUITE
200, EAGAN, MN  55121 1-866-234-8271

UNOFFICIAL

File Number: 2015-0568151    Page 2 of 2

Exhibit D

Court Case No.:
LS&R No.: 201800695
hcd

## Legal Description

**Situated in the City of North Ridgeville, County of
Lorain and State of Ohio: part of Original Ridgeville
Township, Lot 7, and known as being Sublot No. 238 in
Mills Creek Subdivision Section "D" as shown by the
recorded plat in Volume 25 of Maps, Page 37 of Lorain
County Records, and having a frontage of 80.00 feet on
the Westerly side of Mills Creek Lane, and extending
back of equal width 285.00 feet, be the same more or
less, but subject to all legal highways.**

Property Address: 5278 Mills Creek Lane, North Ridgeville, OH
44039
Parcel No: 0700007130070
Prior Deed Reference: Instrument No. 2015-0539539

Legal description reviewed by _____
on 1-30-18          per ORC Section 5713.03